IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re EUGENE V. MCCAULEY JR.,<br>Debtor. | |
| J. KEVIN BIRD, Chapter 7 Trustee,<br>Appellant,<br>v.<br>MICHAEL MCCAULEY, SUSAN KNORR, NANCY GALLEGOS, ELIZABETH MCCAULEY, and RE MCCAULEY, LLC,<br>Appellees. | MEMORANDUM DECISION AND ORDER ON BANKRUPTCY APPEAL<br>Case No. 2:14-cv-00749-TC<br>Bankruptcy Case No. 10-30907<br>(Adversary Proceeding No. 12-2313) |

This appeal arises from the Chapter 7 bankruptcy of Eugene V. McCauley, Jr. When Mr. McCauley filed his bankruptcy petition, he and his wife, Elizabeth, were living on a ranch in Ballard, Utah ("the Ballard property"). Record title to the Ballard property was held by R.E. McCauley, LLC (REM), an LLC formed by Mr. McCauley's mother. Two weeks after Mr. McCauley filed his bankruptcy case, his sister, Susan Knorr, acting as REM's manager, signed a deed conveying the Ballard property to herself and her other two siblings, Michael McCauley and Nancy Gallegos.

Appellant J. Kevin Bird, the bankruptcy trustee, filed an adversary proceeding, seeking a declaration that Mr. McCauley was the equitable owner of REM and the Ballard property. The Trustee also sought to avoid the post-petition transfer of the Ballard property to Mr. McCauley's siblings. The case was tried before the bankruptcy court in March 2014. The bankruptcy court

concluded that Elizabeth McCauley was not the sole member of REM and did not hold her membership interest for Mr. McCauley's benefit. Based on these conclusions, the bankruptcy court dismissed the Trustee's claims without reviewing the post-petition transfer.

The Trustee now appeals. For the reasons explained below, the bankruptcy court's decision is reversed and remanded to the bankruptcy court to decide whether the post-petition transfer of the Ballard property was an avoidable transfer.

## BACKGROUND[1]

### I. Factual Background

Ruth McCauley had four children: Eugene McCauley, Michael McCauley, Susan Knorr, and Nancy Gallegos. Eugene McCauley was incarcerated from June 1, 2000, until May 20, 2008.

On June 5, 2000, Ruth McCauley formed the Ruth E. McCauley Revocable Trust ("the Trust") and named herself and Ms. Knorr as co-trustees. On the same day Ruth McCauley created the Trust, she also executed a separate will that poured over all of her property to the Trust upon her death.

On June 23, 2004, Ruth McCauley organized R.E. McCauley, LLC (REM), naming herself as sole member and manager. On May 21, 2005, Ruth McCauley updated REM's records to add Ms. Knorr as a member. At trial, Ms. Knorr claimed that this change established her ownership of a 50% membership interest in REM. But Ms. Knorr had previously testified that

[1] The court takes the facts from the bankruptcy court's Pretrial Order, in which the parties agreed to "uncontested facts" that were established by admissions or stipulation of the parties. (Pretrial Order, Appellant's App. 16, ECF No. 12-1.) The court has also added other facts from the record that were not included in the Pretrial Order and has identified these additional facts by citations to the record.

she held her REM membership interest in her capacity as Ruth McCauley's personal representative and as trustee of the Trust. The bankruptcy court found Ms. Knorr's initial testimony more credible and concluded that, at all times, Ms. Knorr held her membership interest solely as Ruth McCauley's personal representative and trustee of the Trust. (Findings of Fact & Conclusions of Law, Appellant's App. 112, ECF No. 12-1.) In response to discovery requests in the adversary proceeding, no tax returns or any other business records were produced for REM, except its initial organizational documents and periodic updates filed with the Utah Department of Commerce.

On July 22, 2006, Ruth McCauley died, which made Ms. Knorr sole trustee of the Trust. In addition, the Trust became irrevocable. Ms. Knorr was also executor of Ruth McCauley's will, which required that all of Ruth McCauley's non-Trust assets became assets of the Trust. So when Ruth McCauley died, the Trust became the owner of Ruth McCauley's membership interest in REM. The Trust also owned an unknown[2] amount of cash and some real property in Roosevelt, Utah.

The Trust agreement required distribution of the Trust assets in equal shares among Ruth McCauley's four children. By May 2008, Ms. Knorr had distributed substantially all of the Trust property to herself, Michael McCauley, and Ms. Gallegos. But she had not made any significant distributions to Eugene McCauley and had not made any distribution of the Trust's membership interest in REM. At that time, REM owned an account at Mountain America Credit Union. It

[2] The amount of cash and other Trust assets is unknown because Ms. Knorr did not make a list of Trust assets and did not perform an accounting to show how she distributed the Trust assets. (Findings of Fact & Conclusions of Law, Appellant's App. 113.)

also owned the Ballard property, which consisted of a sixty-acre ranch parcel with a residence, an adjoining 120-acre parcel, and Dry Gulch Irrigation water shares.

Eugene McCauley was released from prison on May 20, 2008. Around the time of his release, Ms. Knorr arranged for Eugene McCauley and his wife, Elizabeth McCauley, to move onto and live at the Ballard property. The McCauleys paid no rent but were responsible for maintenance, repairs, utilities, water, and taxes. In an application for homeowner's insurance, Eugene McCauley identified himself as owner and the policy's loss payee.[3] He also signed and recorded an easement in favor of Moon Lake Electric that burdened the Ballard property.

On May 25, 2008, Ms. Knorr signed a document that stated, "The Ruth E McCauley Revocable Trust has been revoked as of the 25th day of May 2008 and any and all assets have been distributed as I Susan K Knorr the Trustee have seen fit." (May 25, 2008 Document, Appellant's App. 874, ECF No. 12-5.) Eugene McCauley, Michael McCauley, Ms. Knorr, and Ms. Gallegos all signed the document as beneficiaries of the Trust. Ms. Knorr maintains that she kept no accounting of the Trust assets or her distribution of the assets to herself and her siblings.

Within three weeks after Eugene McCauley and Elizabeth moved onto the Ballard property, Ms. Knorr arranged to make Eugene McCauley signatory on the REM bank account. On the signatory application, Eugene McCauley was identified as an "authorized signer/manager" for REM, and his address, phone number, and email address were listed as the contact information for REM. When Ms. Knorr made Eugene McCauley signatory, the REM

[3] A loss payee is one "named in insurance policy to be paid in event of loss or damage to property insured." *Loss Payee*, Black's Law Dictionary (6th ed. 1990).

account had a balance of $49,303.20. After becoming a signatory, Eugene McCauley was the only party who wrote checks from the REM account.

On March 5, 2009, Ms. Knorr updated REM's records to change her status from member to manager and to name Elizabeth McCauley as a member.

**II. Bankruptcy Court Proceedings**

Eugene McCauley's bankruptcy in this case stems from a November 4, 2002 judgment against him, obtained by Yukon Excavation, LLC ("Yukon") with a principal amount of $92,754.03. On July 22, 2010, Yukon obtained a writ of garnishment directed to Ms. Knorr as trustee of the Trust, and on August 2, 2010, the writ was served on Ms. Knorr. On August 11, 2010, Eugene McCauley closed the REM bank account. The next day, he filed his petition for Chapter 7 bankruptcy. In his bankruptcy schedules, Eugene McCauley identified Yukon as the only creditor with a significant claim against him.

On August 30, 2010, Ms. Knorr, signing as manager of REM, conveyed the Ballard property to herself, Michael McCauley, and Ms. Gallegos. On September 9, 2010, Ms. Knorr filed articles of dissolution for REM. The articles identified the reason for dissolution as "PUT THE PROPERTY IN OUR INDIVIDUAL NAMES. DISSOLVED THE LLC." (Articles of Dissolution, Appellant's App. 1074, ECF No. 12-6.) Ms. Knorr provided a retroactive dissolution date of May 20, 2009. On September 9, 2010 (the date the articles were filed), and May 20, 2009 (the retroactive dissolution date), Elizabeth McCauley was the only member of REM listed on the records filed with the Utah Department of Commerce. In March 2014, at the time of the trial in the adversary proceeding, Eugene and Elizabeth McCauley continued to reside at the Ballard property rent free.

At trial, the bankruptcy court heard testimony from each of Ruth McCauley's children and from Elizabeth McCauley. When asked about the March 5, 2009 change in membership that named Elizabeth as the sole member of REM, Ms. Knorr testified that she did not remember making the change or the reason for doing so. (Trial Tr., Appellant's App. 411-12, ECF No. 12-2.) Elizabeth testified that, until she learned about it in the adversary proceeding, she had never heard of REM and was not aware she was a member. (Trial Tr., Appellant's App. 541, ECF No. 12-3.) Michael McCauley testified that he had no membership interest or involvement in REM. (Id. at 512.) And Ms. Gallegos testified that she knew nothing about REM until the adversary proceeding. (Id. at 519.)

On September 30, 2014, the bankruptcy court issued its Findings of Fact and Conclusions of Law. (Appellant's App. 110-38, ECF No. 12-1.) The bankruptcy court concluded that the Trustee failed to prove that Elizabeth was the sole member of REM. Although Elizabeth was the only member identified in state records, the court concluded that Ruth McCauley's former membership interest in REM had not been distributed and remained an asset of the Trust, with Ms. Knorr holding the beneficial interest in trust for her siblings.

The bankruptcy court also rejected the Trustee's theories of resulting trust, constructive trust, and alter ego[4] and therefore held that the Trustee failed to prove that Elizabeth held her REM membership interest for Eugene McCauley.

For constructive trust, the court could not determine "whether the Trustee [was] alleging a constructive trust should be imposed to give effect to an oral express trust or as a matter of

[4] The Trustee does not reiterate its resulting trust or alter ego arguments before this court. Accordingly, the court limits its analysis to the Trustee's constructive and resulting trust theory.

equity because a party has been unjustly enriched." (Id. at 127.) Addressing both alternatives, the bankruptcy court declined to find an oral express trust because it found no evidence that Elizabeth received a beneficial interest in REM. Rather, Ms. Knorr held all beneficial interest in REM as trustee of the Trust because Ruth McCauley retained such interest until her death.

The bankruptcy court also denied the constructive trust claim to the extent it was premised on an equitable notion that Elizabeth was holding her REM interest for Eugene McCauley's benefit. According to the bankruptcy court:

> The only evidence the Trustee relies upon for this proposition is the fact that Elizabeth is Eugene's wife, that she was not a beneficiary of Ruth's Trust and that she disavows any knowledge of receiving a membership interest in REM. The Trustee also asserts that each of Eugene's siblings received some cash and a parcel of real property, and the Court should conclude that Eugene received REM. The Trustee's oversimplified characterization of the facts is not supported by the evidence. The Trustee has not even attempted to define what the Trust assets were and simply argues that Michael, Susan, and Nancy each received a parcel of real property, therefore Eugene should have received a parcel of real property. The problem with the Trustee's theory is that based on the evidence before the Court, the Trust assets were not distributed equally but it is not possible to determine the inequality of distribution of Trust assets or that REM and the Ballard Property approximate Eugene's equal share of the Trust assets.

(Id. at 130–31.) Without evidence of a nequal distribution of the Trust assets, and without evidence of the value of Elizabeth's membership interest, the bankruptcy court determined it was impossible to balance the equities or decide if a constructive trust should be imposed.

With these conclusions, the bankruptcy court held that the Trustee had failed to prove his claims. The bankruptcy court therefore dismissed the Trustee's claims and granted judgment in the Defendants' favor.

## ANALYSIS

### I. Jurisdiction and Standard of Review

The Trustee appeals the bankruptcy court's dismissal of all claims in the adversary proceeding. This court has jurisdiction under 28 U.S.C. § 158(a) to review the Trustee's appeal. The Trustee contends that reversal is warranted because the bankruptcy court misapplied the law and failed to consider or give proper weight to relevant, uncontroverted facts. These are questions of law that the court reviews de novo. See Osborn v. Durant Bank & Trust Co. (In re Osborn), 24 F.3d 1199, 1203 (10th Cir. 1994) ("[W]hen a lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to de novo review."), abrogated in part on unrelated grounds by Eastman v. Union Pac. R.R., 493 F.3d 1151, 1156 (10th Cir. 2007); Bird v. Winterfox, LLC (In re Kitts), 442 B.R. 818, 824 (D. Utah 2010) ("Failure to consider or give proper weight or significance to relevant evidence . . . presents a question of law.").

### II. REM Membership

The Trustee first asserts that, at the time Eugene McCauley filed his bankruptcy petition, Elizabeth McCauley was the sole member of REM. The bankruptcy court rejected this position and concluded that, even though Elizabeth was the only member listed in REM's state records, Ruth McCauley's former interest in the company had not been distributed and continued to be an asset of the Trust. This conclusion is inconsistent with the uncontroverted facts in this case.

Before the trial in the adversary proceeding, the parties stipulated to the following: Ruth McCauley formed REM on January 23, 2003. (Pretrial Order, Appellant's App. 19, ECF

No. 12-1.) Ruth McCauley was the sole member and manager until May 25, 2005, when she updated REM's records to add Ms. Knorr as a member.[5] (Id. at 19–20.) When Ruth McCauley died in July 2006, her interest in REM, along with her other assets, poured over into the Trust by operation of her pour-over will. (See id. at 17.) Then, on March 5, 2009, Ms. Knorr updated REM's records to reflect that Elizabeth had become a member and Ms. Knorr's status had changed from member to manager. (Id. at 20.)

Although the bankruptcy court concluded that state filings could not determine REM's membership, the documents on record with the Utah Department of Commerce provide the only evidence from which a court could determine who held membership interests in REM. And when viewed together with the parties' stipulated facts, the records confirm that, before Ruth McCauley died, Ms. Knorr and Ruth McCauley were members of REM. When Ruth McCauley died, her interest in REM poured over into the Trust, with Ms. Knorr acting as sole trustee. So after Ruth McCauley's death, Ms. Knorr held or controlled 100% of the REM membership interest and did so as trustee and personal representative of Ruth McCauley's estate.

On March 5, 2009, Ms. Knorr updated the Utah Department of Commerce's records to reflect that her interest in REM changed from a membership interest to a managing interest. (Id. at 20.) In the same filing, Ms. Knorr identified Elizabeth McCauley as a member. (Id.) And as of particular dates both before and after the Debtor's bankruptcy filing, Elizabeth was the only

[5] As explained above, the bankruptcy court also made a factual finding that when Ms. Knorr was a member of REM, she held her membership interest as trustee of the Trust and later as personal representative of Ruth McCauley's estate. Ms. Knorr did not hold a personal ownership interest in REM. (Findings of Fact & Conclusions of Law, Appellant's App. 112, ECF No. 12-1.) The court does not see any error in this finding.

member of REM listed in the Utah Department of Commerce records. (Id. at 21.) No other records or membership changes were filed with the state. REM did not produce any other records in discovery that show additional members of REM. Moreover, the other McCauley siblings confirmed that they had no interest in REM or did not know that REM existed until this case was filed. Under these circumstances, the state records provide undisputed evidence that Elizabeth was the sole member of REM when Eugene McCauley filed his bankruptcy petition in August 2010.

The bankruptcy court reached a different decision based on its conclusion that Ruth McCauley's interest in REM was never distributed. The bankruptcy court explained, "When REM's filing with the Utah Department of Commerce on March 5, 2009 added Elizabeth as a member of REM and removed Ms. Knorr as a member, Ruth McCauley's membership interest in REM remained an asset of the Trust." (Findings of Fact & Conclusions of Law, Appellant's App. 121.) This conclusion overlooks the fact that the Trust had been revoked when Ms. Knorr named Elizabeth as a member of REM. On May 25, 2008, Ms. Knorr, Eugene McCauley, Michael McCauley, and Ms. Gallegos all signed a document confirming that all assets of the Trust had been distributed and the Trust revoked. (May 25, 2008 Document, Appellant's App. 874, ECF No. 12-5.) In other words, all of the siblings confirmed that the Trust no longer held any property, including Ruth McCauley's former REM membership interest. It is not clear when Ruth McCauley's interest in REM was transferred from the Trust or to whom it was transferred. But, as of May 25, 2008, the Trust no longer held any interest in REM. And nearly a year later, Ms. Knorr updated REM's public records to list Elizabeth as REM's sole member. This filing, combined with the fact that the Trust no longer held an interest, confirms that Elizabeth held a

100% membership interest in REM. Because the bankruptcy court's decision conflicts with the undisputed and stipulated facts, the court reverses the bankruptcy court's ruling on this issue.

**III. Constructive Trust**

The Trustee also appeals the bankruptcy court's conclusion that Elizabeth was not holding her membership interest in REM for Eugene McCauley's benefit and maintains that this decision should be reversed on a theory of constructive trust. In Utah, there are multiple legal standards that courts apply to determine whether a constructive trust should be imposed. Section 160 of the Restatement (Second) of Trusts provides one such standard. Because the bankruptcy court failed to acknowledge and apply § 160, the Trustee argues its decision should be reversed.

In Parks v. Zions First National Bank, 673 P.2d 590 (Utah 1983), the Utah Supreme Court adopted Section 160 and explained that this section "presents the broadest possible application of a constructive trust." Id. at 599. Section 160 "provides that a constructive trust may arise where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Id. (quotations omitted). The plaintiff in Parks was a surviving husband who sought a constructive trust against his late wife's estate. The estate included property accumulated during the marriage titled solely in the wife's name. The wife's will provided only a life estate in the marital residence and a monthly stipend for the husband. Because the husband had contributed financially to the estate, he sued to establish his equitable interest in half of the marital estate and relied on a constructive trust theory.

Although the circumstances in Parks did not satisfy other tests for imposing constructive trusts, the court concluded that the husband held an equitable interest and the estate would be unjustly enriched if it retained sole ownership of the marital property. As a result, Section 160 provided a remedy for the husband.

Utah courts have since applied Section 160 in other contexts to impose constructive trusts. In In re Estate of Lefevre, 2009 UT App 286, 220 P.3d 476, the plaintiffs had not made financial contributions to their deceased father's property but claimed an equitable interest as his heirs. The Utah Court of Appeals agreed and held that the plaintiffs were entitled to a constructive trust to be imposed against the children of their stepmother who held legal title to the property. In Rawlings v. Rawlings, 2010 UT 52, 204 P.3d 754, the Utah Supreme Court similarly held that, despite the fact that the plaintiffs had not contributed to their deceased father's property, they had an equitable claim as his children and because they had paid taxes and other expenses related to the property. The court therefore concluded that a constructive trust was appropriate against a sibling who held legal title.

Applying § 160 to the facts of this case, the court concludes that the Trustee has met his burden to provide clear and convincing evidence to support his claim for constructive trust. See Taylor v. Rupp (In re Taylor), 133 F.3d 1336, 1342 (10th Cir. 1998) ("[T]he circumstances requiring imposition of a constructive trust must be found to exist by clear and convincing evidence." (quotations omitted)).

When Ruth McCauley died in July 2006, the terms of the Trust required that the Trust property be distributed equally among her four children. Under this provision, all four siblings, including Eugene McCauley, had an equitable interest in the Trust's property. The bankruptcy

court found that Ruth McCauley's estate was not distributed equally as required by the Trust. The court does not disagree with this finding. But even accepting an unequal distribution of Ruth McCauley's estate, the bankruptcy court found evidence that Eugene McCauley's siblings received substantial distributions from the Trust while he was incarcerated. Ms. Gallegos or her designees received over $18,000 from REM in 2006. Ms. Knorr received approximately $40,000 from the Trust. And Michael McCauley received over $58,000 from the Trust's accounts. (Findings of Fact & Conclusions of Law, Appellant's App. 114.) Each of the siblings, except Eugene McCauley, had received substantial proceeds from the Trust before Eugene McCauley was released from prison. The parties also stipulated that "[e]xcept for the Trust's ownership interest in REM . . . [Ms. Knorr] had distributed substantially all of the property of the Trust to Michael McCauley, herself, and [Ms. Gallegos] by May 2008." (Pretrial Order, Appellant's App. 18.) In sum, when Eugene McCauley was released from prison on May 20, 2008, he had not received any distribution from the Trust and the only remaining Trust property was the Trust's ownership interest in REM.

On May 25, 2008, the Trust was revoked, with the representation from the four siblings that all Trust assets had been distributed. At trial, Michael McCauley and Ms. Gallegos confirmed that they claimed no interest in REM. If the REM interest was not distributed to Eugene McCauley, it remained with Ms. Knorr. But on March 5, 2009, Ms. Knorr disclaimed any interest she may have had in REM and identified Elizabeth as REM's only member. The bankruptcy court relied on the Utah Revised LLC Act for the conclusion that, even if Elizabeth was the only member of REM, she did not own REM's assets. Although the statute does state that a member of an LLC has no interest in specific property of the company, Utah Code Ann.

§ 48-2c-701(2), it also defines a "member" of an LLC as a person with "an ownership interest in a company." Id. 48-2c-102(14)(a). As of March 2009, Elizabeth was the only member of REM and therefore the only person with an ownership interest in the company.

Although Elizabeth was the sole member of REM, there is no evidence that she held her membership interest for herself. Elizabeth was not a beneficiary of the Trust. And she had no knowledge of REM or the fact that she was the LLC's only member. Eugene McCauley, however, did have an equitable interest in REM as one of Ruth McCauley's heirs and as a beneficiary of the Trust.

Moreover, Eugene McCauley had plenary control over REM's assets. As the parties stipulated before trial, when Eugene McCauley was released from prison on May 20, 2008, Ms. Knorr arranged for him and Elizabeth to move onto and live at the Ballard Property. Eugene McCauley paid no rent but was responsible for all maintenance and repairs and paid for utilities, water, and taxes. Eugene McCauley identified himself as the owner of the Ballard Property on an application for homeowner's insurance. In addition, he signed a recorded easement that burdened the Ballard Property. Ms. Knorr also made Eugene McCauley a signatory on the REM account, and after becoming signatory, Eugene McCauley was the only person who wrote checks from the REM account. In short, Eugene McCauley had exclusive possession and control over REM's assets.

Under these circumstances, there is clear and convincing evidence that Elizabeth was merely a nominee who held her REM membership interest on Eugene McCauley's behalf. Eugene McCauley had a equitable interest in REM and exercised that interest. Elizabeth, on the other hand, had no involvement and no knowledge of REM. She would be unjustly enriched to

retain a 100% ownership interest in a company that was clearly under Eugene McCauley's exclusive control. As such, a constructive trust should be imposed to reflect Eugene McCauley's interest in REM and REM's assets, including the Ballard Property and the REM bank account.

**ORDER**

For the foregoing reasons, the September 30, 2014, decision of the United States Bankruptcy Court for the District of Utah in Adversary Proceeding No. 12-2313, Bankruptcy Case No. 10-30907, is REVERSED and REMANDED for a determination of whether the post-petition transfer of the Ballard property was an avoidable transfer.

SO ORDERED this 18th day of September, 2015.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
U.S. District Court Judge